UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

_____X

| | |
|---|---|
| FRANCIS E. BAKUTIS, | CIVIL ACTION<br>No: 3:02CV01877(SRU) |
|    Plaintiff | |
| VS. | **FELA HEARING LOSS<br>CASE.  MAY BE FILED IN<br>NEW HAVEN AS<br>ORDERED BY<br>MAGISTRATE JUDGE<br>MARGOLIS.** |
| METRO-NORTH RAILROAD COMPANY,<br>et al., | February 5, 2004 |
|    Defendants | |

_____X

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR RECONSIDERATION**

The plaintiffs seek to have the Court reconsider its January 23, 2004 Ruling on the plaintiffs' Motion To Compel the Conrail Defendants.  Specifically, the plaintiffs seek to have the Court reconsider its ruling with respect to requests 5, 14, 25, 27, 28, and 29.  The Court should reconsider its ruling because it limited the scope of the requests to the "sites at which the plaintiff worked" when many, if not most, plaintiffs worked in mobile crews along the railroad tracks and were exposed loud noise from equipment/machinery that moved along the tracks and was used on the tracks.

**ORAL ARGUMENT REQUESTED.**

Many plaintiffs worked in the Defendants' Track Department in rail gangs, tie gangs, or surfacing gangs. These plaintiffs were exposed to noise from many different types of equipment/machinery that moved along the tracks and were used on the tracks. Likewise, several plaintiffs who were in the signal department rarely worked in a single location or facility - many worked along the tracks repairing equipment and they too were exposed to the noise from equipment and machinery that moved along the tracks and worked on the tracks. Only a few plaintiffs in the first two groups of hearing loss cases worked in a specific "site" or "facility" for any substantial period of time.

The noise to which many plaintiffs were exposed was from equipment/machinery used at hundreds of random locations on and around the tracks. See p. 3 of Ps.' Mem. of Law In Support Of Their Motion To Compel (listing the types of noisy equipment plaintiffs in the first two groups of hearing loss cases worked with or near). The Court, by limiting the production of documents to "sites" at which the plaintiff worked, is excluding all noise level testing of the types of equipment and machinery used by the plaintiffs or near which the plaintiffs frequently had to work on the tracks. Thus, documents such as Conrail's 1979 Maintenance of Way Noise Survey, a portion of which is attached hereto at App. 1,[1] would not even be covered by the Court's Order despite the fact such a document is highly relevant in nearly every hearing loss case.

A second example how the Court's Order fails to cover discoverable information concerns the testing of train horns and whistles. Most plaintiffs were repeatedly exposed to the train horns and whistles each time a train passed their work sites. Train engineers were required to blow the horns each time they came upon work crews near the tracks. Many

---

[1] A copy of Appendix 1 is only attached to the Court's copy of the instant motion and is not being filed with each respective hearing loss case. Appendix 1 was not produced by Conrail's attorneys in connection to these hearing loss cases despite the fact it is highly relevant.

plaintiffs testified there were usually several horn blasts per hour and the noise was extremely loud. Yet, if the Court limits production of documents to the "sites" the plaintiffs worked, the plaintiffs will never obtain relevant information about the decibel levels of the train horns and whistles.

A third example concerns machinery such as rail saws. Many plaintiffs have testified that they worked with and around rail saws, in addition to other noisy machinery. Yet, the Court's Order does not require production of documents pertaining to testing of noise levels of rail saws or other noisy machinery listed on page 3 of their Memorandum. The plaintiffs were exposed to noise from all the equipment/machinery listed on page 3.

RFP 5: "All documents published by Defendants or any organization or other group with which the defendant is or has been affiliated referring to noise exposure to railroad workers."

The Court limited the production of responsive documents to the "sites at which the plaintiffs worked." This request seeks information pertaining to general knowledge the Defendants had about noise exposure with regard to railroad workers. Such information is relevant to what the railroad knew or reasonably should have known about the risks noise exposure posed to railroad workers and whether the railroads acted reasonably to provide the plaintiffs with a safe place to work. Moreover, it should not be limited to "sites at which the plaintiffs worked" because most of the plaintiffs were exposed to noise from equipment/machinery along the tracks, as described above.

Accordingly, the plaintiffs respectfully request the Court reconsider its ruling regarding Request 5. Upon reconsideration, the plaintiffs request the Court order production of all responsive documents pertaining to the effects of noise on railroad workers generally, including the effects of noise on railroad workers of the same crafts as the plaintiffs, and the effects of noise on railroad workers who work around equipment of a similar type and kind the plaintiffs worked with and around.

RFP 14 "All documents reflecting or pertaining to the Defendants' knowledge of alleged problems posed by noise exposure."

The Court limited production of responsive documents to "the sites at which Plaintiffs worked during the times that Plaintiffs worked."    Again, the plaintiffs request the Court not limit the production of responsive documents to "sites" because most of the plaintiffs worked along the tracks and were exposed to loud noise from mobile equipment/machinery.  Moreover, this Request seeks information pertaining to general knowledge the Defendants had about problems posed by noise exposure.  Such information is relevant to what the railroad knew or reasonably should have known about the risks noise exposure posed to railroad workers and whether the railroads acted reasonably to provide the plaintiffs with a safe place to work.

Accordingly, the plaintiffs respectfully request the Court reconsider its ruling regarding Request 14.  Upon reconsideration, the plaintiffs request the Court order production of all responsive documents pertaining to the defendants' knowledge of alleged problems posed by noise exposure generally, including the knowledge of alleged problems on railroad workers of the same crafts as the plaintiffs, and regarding equipment of similar type and kind the plaintiffs worked around.

RFP 25 "Any communications, instructions, directions or orders to any supervisory personnel that refers, reports, or relates to hearing loss or noise protection."

The Court limited the production of responsive documents to "the railroad facilities at which Plaintiffs' worked during the times that Plaintiffs worked...."  In addition to "facilities at which the plaintiffs worked," the plaintiffs request the Court request production of responsive documents pertaining to the plaintiffs' respective department, the plaintiffs' respective job craft, and the types of equipment/machinery the plaintiffs worked with or around.  Again, many plaintiffs did not work in facilities - they worked along the railroad tracks around the equipment and machines listed on page 3 of the plaintiffs' Memorandum.

RFP 27 "With regard to Defendants' hearing testing program, please provide any and all documentation concerning any statistics or figures on average hearing loss, total hearing loss, or any statistics compiled with regard to the hearing program conducted by the Defendants."

The plaintiffs respectfully request the Court not limit this Request to "facilities at which Plaintiffs worked" for the reasons set forth supra.  Also, the plaintiffs ask that this Request not be limited to information prepared before 1984.  Statistics compiled of average hearing loss among railroad workers and among various railroad jobs can be compared with hearing loss statistics concerning the general population in order to help prove that noise from working on the railroad contributed to causing the plaintiffs' hearing loss.  If the defendants' statistics of noise loss among railroad workers were compiled in the mid to late 1980s or in the 1990s, they are no less probative than statistics compiled in the 70s or early 80s.

RFP 28 "Produce a copy of any and all correspondence, memoranda, or tangible evidence in whatever form concerning any safety meeting, safety minutes, safety booklets, safety information, or any tangible evidence concerning any written safety materials utilized at said safety meetings."

The plaintiffs respectfully request the Court reconsider its decision to limit this Request to "the facilities at which Plaintiffs' worked."  Upon reconsideration, the plaintiffs request production of responsive documents insofar as they relate to noise, hearing loss and hearing protection (1) at the plaintiffs' work facilities, (2) involving the plaintiffs' job and craft, and (3) concerning equipment/machinery of similar type and kind the plaintiffs worked with or near.

RFP 29 "Produce a copy of any and all tests, reports, examinations, studies, surveys or result in whatever tangible form concerning any and all inspections concerning noise levels."

The Court limited the scope of this Request to "the facilities at which Plaintiffs worked . . . ."  In addition to "facilities," the plaintiffs ask the Court to require production of responsive documents pertaining to the plaintiffs' job/craft and equipment/machinery of similar type and kind the plaintiffs worked with or near.  The types of noisy equipment and machinery the plaintiffs worked with or near is set forth on page 3 of their Memorandum and was described in

greater detail in their depositions.

For the foregoing reasons, the plaintiffs respectfully request the Court reconsider its rulings regarding Requests 5, 14, 25, 27, 28, and 29.   Upon reconsideration, the plaintiffs request the Court grant the plaintiffs' Motion to Compel to the extent sought herein.   The plaintiffs also move for a ten day extension of time from the Court's decision with respect to the instant Motion within which to file any objections to the Court's January 23, 2004 Ruling on the Plaintiffs' Motion To Compel Conrail Defendants.

Respectfully submitted,

FOR THE PLAINTIFFS,


By_____
   Scott E. Perry (ct17236)
   CAHILL & GOETSCH, P.C.
   43 Trumbull Street
   New Haven, Connecticut  06511
   (203) 777-1000


## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed, first class mail, postage prepaid, on this 5th day of February, 2004, to Lori A. McCarthy, Esq., Flynn & Associates, P.C., 189 State Street, 6th Floor, Boston, Massachusetts 02109; and to Anthony D. Sutton, Esq., Ryan, Ryan, Johnson & Deluca, LLP, 80 Fourth Street, P.O. Box 3057, Stamford, Connecticut  06905.


_____
Scott E. Perry

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

_____X

| | |
|---|---|
| ROBERT C. BLACK, | CIVIL ACTION<br>No:  3:02CV01873(AVC) |
|    Plaintiff | |
| | **FELA HEARING LOSS** |
| VS. | **CASE.  MAY BE FILED IN** |
| | **NEW HAVEN AS** |
| | **ORDERED BY** |
| | **MAGISTRATE JUDGE** |
| | **MARGOLIS.** |
| | |
| METRO-NORTH RAILROAD COMPANY,<br>et al., | February 5, 2004 |
| | |
|    Defendants | |

_____X

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR RECONSIDERATION**

      The plaintiffs seek to have the Court reconsider its January 23, 2004 Ruling on the plaintiffs' Motion To Compel the Conrail Defendants.  Specifically, the plaintiffs seek to have the Court reconsider its ruling with respect to requests 5, 14, 25, 27, 28, and 29.  The Court should reconsider its ruling because it limited the scope of the requests to the "sites at which the plaintiff worked" when many, if not most, plaintiffs worked in mobile crews along the railroad tracks and were exposed loud noise from equipment/machinery that moved along the tracks and was used on the tracks.

**ORAL ARGUMENT REQUESTED.**

Many plaintiffs worked in the Defendants' Track Department in rail gangs, tie gangs, or surfacing gangs. These plaintiffs were exposed to noise from many different types of equipment/machinery that moved along the tracks and were used on the tracks. Likewise, several plaintiffs who were in the signal department rarely worked in a single location or facility - many worked along the tracks repairing equipment and they too were exposed to the noise from equipment and machinery that moved along the tracks and worked on the tracks. Only a few plaintiffs in the first two groups of hearing loss cases worked in a specific "site" or "facility" for any substantial period of time.

The noise to which many plaintiffs were exposed was from equipment/machinery used at hundreds of random locations on and around the tracks. See p. 3 of Ps.' Mem. of Law In Support Of Their Motion To Compel (listing the types of noisy equipment plaintiffs in the first two groups of hearing loss cases worked with or near). The Court, by limiting the production of documents to "sites" at which the plaintiff worked, is excluding all noise level testing of the types of equipment and machinery used by the plaintiffs or near which the plaintiffs frequently had to work on the tracks. Thus, documents such as Conrail's 1979 Maintenance of Way Noise Survey, a portion of which is attached hereto at App. 1,[2] would not even be covered by the Court's Order despite the fact such a document is highly relevant in nearly every hearing loss case.

A second example how the Court's Order fails to cover discoverable information concerns the testing of train horns and whistles. Most plaintiffs were repeatedly exposed to the train horns and whistles each time a train passed their work sites. Train engineers were required to blow the horns each time they came upon work crews near the tracks. Many

---

[2] A copy of Appendix 1 is only attached to the Court's copy of the instant motion and is not being filed with each respective hearing loss case. Appendix 1 was not produced by Conrail's attorneys in connection to these hearing loss cases despite the fact it is highly relevant.

plaintiffs testified there were usually several horn blasts per hour and the noise was extremely loud. Yet, if the Court limits production of documents to the "sites" the plaintiffs worked, the plaintiffs will never obtain relevant information about the decibel levels of the train horns and whistles.

A third example concerns machinery such as rail saws. Many plaintiffs have testified that they worked with and around rail saws, in addition to other noisy machinery. Yet, the Court's Order does not require production of documents pertaining to testing of noise levels of rail saws or other noisy machinery listed on page 3 of their Memorandum. The plaintiffs were exposed to noise from all the equipment/machinery listed on page 3.

RFP 5: "All documents published by Defendants or any organization or other group with which the defendant is or has been affiliated referring to noise exposure to railroad workers."

The Court limited the production of responsive documents to the "sites at which the plaintiffs worked." This request seeks information pertaining to general knowledge the Defendants had about noise exposure with regard to railroad workers. Such information is relevant to what the railroad knew or reasonably should have known about the risks noise exposure posed to railroad workers and whether the railroads acted reasonably to provide the plaintiffs with a safe place to work. Moreover, it should not be limited to "sites at which the plaintiffs worked" because most of the plaintiffs were exposed to noise from equipment/machinery along the tracks, as described above.

Accordingly, the plaintiffs respectfully request the Court reconsider its ruling regarding Request 5. Upon reconsideration, the plaintiffs request the Court order production of all responsive documents pertaining to the effects of noise on railroad workers generally, including the effects of noise on railroad workers of the same crafts as the plaintiffs, and the effects of noise on railroad workers who work around equipment of a similar type and kind the plaintiffs worked with and around.

RFP 14 "All documents reflecting or pertaining to the Defendants' knowledge of alleged problems posed by noise exposure."

The Court limited production of responsive documents to "the sites at which Plaintiffs worked during the times that Plaintiffs worked."    Again, the plaintiffs request the Court not limit the production of responsive documents to "sites" because most of the plaintiffs worked along the tracks and were exposed to loud noise from mobile equipment/machinery.   Moreover, this Request seeks information pertaining to general knowledge the Defendants had about problems posed by noise exposure.   Such information is relevant to what the railroad knew or reasonably should have known about the risks noise exposure posed to railroad workers and whether the railroads acted reasonably to provide the plaintiffs with a safe place to work.

Accordingly, the plaintiffs respectfully request the Court reconsider its ruling regarding Request 14.   Upon reconsideration, the plaintiffs request the Court order production of all responsive documents pertaining to the defendants' knowledge of alleged problems posed by noise exposure generally, including the knowledge of alleged problems on railroad workers of the same crafts as the plaintiffs, and regarding equipment of similar type and kind the plaintiffs worked around.

RFP 25 "Any communications, instructions, directions or orders to any supervisory personnel that refers, reports, or relates to hearing loss or noise protection."

The Court limited the production of responsive documents to "the railroad facilities at which Plaintiffs' worked during the times that Plaintiffs worked...."  In addition to "facilities at which the plaintiffs worked," the plaintiffs request the Court request production of responsive documents pertaining to the plaintiffs' respective department, the plaintiffs' respective job craft, and the types of equipment/machinery the plaintiffs worked with or around.   Again, many plaintiffs did not work in facilities - they worked along the railroad tracks around the equipment and machines listed on page 3 of the plaintiffs' Memorandum.

4

RFP 27 "With regard to Defendants' hearing testing program, please provide any and all documentation concerning any statistics or figures on average hearing loss, total hearing loss, or any statistics compiled with regard to the hearing program conducted by the Defendants."

The plaintiffs respectfully request the Court not limit this Request to "facilities at which Plaintiffs worked" for the reasons set forth supra.  Also, the plaintiffs ask that this Request not be limited to information prepared before 1984.  Statistics compiled of average hearing loss among railroad workers and among various railroad jobs can be compared with hearing loss statistics concerning the general population in order to help prove that noise from working on the railroad contributed to causing the plaintiffs' hearing loss.  If the defendants' statistics of noise loss among railroad workers were compiled in the mid to late 1980s or in the 1990s, they are no less probative than statistics compiled in the 70s or early 80s.

RFP 28 "Produce a copy of any and all correspondence, memoranda, or tangible evidence in whatever form concerning any safety meeting, safety minutes, safety booklets, safety information, or any tangible evidence concerning any written safety materials utilized at said safety meetings."

The plaintiffs respectfully request the Court reconsider its decision to limit this Request to "the facilities at which Plaintiffs' worked."  Upon reconsideration, the plaintiffs request production of responsive documents insofar as they relate to noise, hearing loss and hearing protection (1) at the plaintiffs' work facilities, (2) involving the plaintiffs' job and craft, and (3) concerning equipment/machinery of similar type and kind the plaintiffs worked with or near.

RFP 29 "Produce a copy of any and all tests, reports, examinations, studies, surveys or result in whatever tangible form concerning any and all inspections concerning noise levels."

The Court limited the scope of this Request to "the facilities at which Plaintiffs worked . . . ."  In addition to "facilities," the plaintiffs ask the Court to require production of responsive documents pertaining to the plaintiffs' job/craft and equipment/machinery of similar type and kind the plaintiffs worked with or near.  The types of noisy equipment and machinery the plaintiffs worked with or near is set forth on page 3 of their Memorandum and was described in

greater detail in their depositions.

For the foregoing reasons, the plaintiffs respectfully request the Court reconsider its rulings regarding Requests 5, 14, 25, 27, 28, and 29. Upon reconsideration, the plaintiffs request the Court grant the plaintiffs' Motion to Compel to the extent sought herein. The plaintiffs also move for a ten day extension of time from the Court's decision with respect to the instant Motion within which to file any objections to the Court's January 23, 2004 Ruling on the Plaintiffs' Motion To Compel Conrail Defendants.

Respectfully submitted,

FOR THE PLAINTIFFS,


By_____
    Scott E. Perry (ct17236)
    CAHILL & GOETSCH, P.C.
    43 Trumbull Street
    New Haven, Connecticut  06511
    (203) 777-1000


## **CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing was mailed, first class mail, postage prepaid, on this 5th day of February, 2004, to Lori A. McCarthy, Esq., Flynn & Associates, P.C., 189 State Street, 6th Floor, Boston, Massachusetts 02109; and to Anthony D. Sutton, Esq., Ryan, Ryan, Johnson & Deluca, LLP, 80 Fourth Street, P.O. Box 3057, Stamford, Connecticut  06905.


_____
Scott E. Perry

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

_____X

JAMES E. CAFFREY,                         CIVIL ACTION
                                          No:  3:02CV01884(CFD)
    Plaintiff

VS.                                       **FELA HEARING LOSS
                                          CASE.  MAY BE FILED IN
                                          NEW HAVEN AS
                                          ORDERED BY
                                          MAGISTRATE JUDGE
                                          MARGOLIS.**

METRO-NORTH RAILROAD COMPANY,             February 5, 2004
et al.,

    Defendants

_____X

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR RECONSIDERATION**

The plaintiffs seek to have the Court reconsider its January 23, 2004 Ruling on the plaintiffs' Motion To Compel the Conrail Defendants.  Specifically, the plaintiffs seek to have the Court reconsider its ruling with respect to requests 5, 14, 25, 27, 28, and 29.  The Court should reconsider its ruling because it limited the scope of the requests to the "sites at which the plaintiff worked" when many, if not most, plaintiffs worked in mobile crews along the railroad tracks and were exposed loud noise from equipment/machinery that moved along the tracks and was used on the tracks.

**ORAL ARGUMENT REQUESTED.**

Many plaintiffs worked in the Defendants' Track Department in rail gangs, tie gangs, or surfacing gangs. These plaintiffs were exposed to noise from many different types of equipment/machinery that moved along the tracks and were used on the tracks. Likewise, several plaintiffs who were in the signal department rarely worked in a single location or facility - many worked along the tracks repairing equipment and they too were exposed to the noise from equipment and machinery that moved along the tracks and worked on the tracks. Only a few plaintiffs in the first two groups of hearing loss cases worked in a specific "site" or "facility" for any substantial period of time.

The noise to which many plaintiffs were exposed was from equipment/machinery used at hundreds of random locations on and around the tracks. See p. 3 of Ps.' Mem. of Law In Support Of Their Motion To Compel (listing the types of noisy equipment plaintiffs in the first two groups of hearing loss cases worked with or near). The Court, by limiting the production of documents to "sites" at which the plaintiff worked, is excluding all noise level testing of the types of equipment and machinery used by the plaintiffs or near which the plaintiffs frequently had to work on the tracks. Thus, documents such as Conrail's 1979 Maintenance of Way Noise Survey, a portion of which is attached hereto at App. 1,[3] would not even be covered by the Court's Order despite the fact such a document is highly relevant in nearly every hearing loss case.

A second example how the Court's Order fails to cover discoverable information concerns the testing of train horns and whistles. Most plaintiffs were repeatedly exposed to the train horns and whistles each time a train passed their work sites. Train engineers were required to blow the horns each time they came upon work crews near the tracks. Many

---

[3] A copy of Appendix 1 is only attached to the Court's copy of the instant motion and is not being filed with each respective hearing loss case. Appendix 1 was not produced by Conrail's attorneys in connection to these hearing loss cases despite the fact it is highly relevant.

plaintiffs testified there were usually several horn blasts per hour and the noise was extremely loud.  Yet, if the Court limits production of documents to the "sites" the plaintiffs worked, the plaintiffs will never obtain relevant information about the decibel levels of the train horns and whistles.

A third example concerns machinery such as rail saws.  Many plaintiffs have testified that they worked with and around rail saws, in addition to other noisy machinery.  Yet, the Court's Order does not require production of documents pertaining to testing of noise levels of rail saws or other noisy machinery listed on page 3 of their Memorandum.  The plaintiffs were exposed to noise from all the equipment/machinery listed on page 3.

RFP 5:  "All documents published by Defendants or any organization or other group with which the defendant is or has been affiliated referring to noise exposure to railroad workers."

The Court limited the production of responsive documents to the "sites at which the plaintiffs worked."  This request seeks information pertaining to general knowledge the Defendants had about noise exposure with regard to railroad workers.  Such information is relevant to what the railroad knew or reasonably should have known about the risks noise exposure posed to railroad workers and whether the railroads acted reasonably to provide the plaintiffs with a safe place to work.  Moreover, it should not be limited to "sites at which the plaintiffs worked" because most of the plaintiffs were exposed to noise from equipment/machinery along the tracks, as described above.

Accordingly, the plaintiffs respectfully request the Court reconsider its ruling regarding Request 5.  Upon reconsideration, the plaintiffs request the Court order production of all responsive documents pertaining to the effects of noise on railroad workers generally, including the effects of noise on railroad workers of the same crafts as the plaintiffs, and the effects of noise on railroad workers who work around equipment of a similar type and kind the plaintiffs worked with and around.

RFP 14 "All documents reflecting or pertaining to the Defendants' knowledge of alleged problems posed by noise exposure."

The Court limited production of responsive documents to "the sites at which Plaintiffs worked during the times that Plaintiffs worked."   Again, the plaintiffs request the Court not limit the production of responsive documents to "sites" because most of the plaintiffs worked along the tracks and were exposed to loud noise from mobile equipment/machinery.  Moreover, this Request seeks information pertaining to general knowledge the Defendants had about problems posed by noise exposure.  Such information is relevant to what the railroad knew or reasonably should have known about the risks noise exposure posed to railroad workers and whether the railroads acted reasonably to provide the plaintiffs with a safe place to work.

Accordingly, the plaintiffs respectfully request the Court reconsider its ruling regarding Request 14.  Upon reconsideration, the plaintiffs request the Court order production of all responsive documents pertaining to the defendants' knowledge of alleged problems posed by noise exposure generally, including the knowledge of alleged problems on railroad workers of the same crafts as the plaintiffs, and regarding equipment of similar type and kind the plaintiffs worked around.

RFP 25 "Any communications, instructions, directions or orders to any supervisory personnel that refers, reports, or relates to hearing loss or noise protection."

The Court limited the production of responsive documents to "the railroad facilities at which Plaintiffs' worked during the times that Plaintiffs worked...."  In addition to "facilities at which the plaintiffs worked," the plaintiffs request the Court request production of responsive documents pertaining to the plaintiffs' respective department, the plaintiffs' respective job craft, and the types of equipment/machinery the plaintiffs worked with or around.  Again, many plaintiffs did not work in facilities - they worked along the railroad tracks around the equipment and machines listed on page 3 of the plaintiffs' Memorandum.

RFP 27 "With regard to Defendants' hearing testing program, please provide any and all documentation concerning any statistics or figures on average hearing loss, total hearing loss, or any statistics compiled with regard to the hearing program conducted by the Defendants."

The plaintiffs respectfully request the Court not limit this Request to "facilities at which Plaintiffs worked" for the reasons set forth supra. Also, the plaintiffs ask that this Request not be limited to information prepared before 1984. Statistics compiled of average hearing loss among railroad workers and among various railroad jobs can be compared with hearing loss statistics concerning the general population in order to help prove that noise from working on the railroad contributed to causing the plaintiffs' hearing loss. If the defendants' statistics of noise loss among railroad workers were compiled in the mid to late 1980s or in the 1990s, they are no less probative than statistics compiled in the 70s or early 80s.

RFP 28 "Produce a copy of any and all correspondence, memoranda, or tangible evidence in whatever form concerning any safety meeting, safety minutes, safety booklets, safety information, or any tangible evidence concerning any written safety materials utilized at said safety meetings."

The plaintiffs respectfully request the Court reconsider its decision to limit this Request to "the facilities at which Plaintiffs' worked." Upon reconsideration, the plaintiffs request production of responsive documents insofar as they relate to noise, hearing loss and hearing protection (1) at the plaintiffs' work facilities, (2) involving the plaintiffs' job and craft, and (3) concerning equipment/machinery of similar type and kind the plaintiffs worked with or near.

RFP 29 "Produce a copy of any and all tests, reports, examinations, studies, surveys or result in whatever tangible form concerning any and all inspections concerning noise levels."

The Court limited the scope of this Request to "the facilities at which Plaintiffs worked . . . ." In addition to "facilities," the plaintiffs ask the Court to require production of responsive documents pertaining to the plaintiffs' job/craft and equipment/machinery of similar type and kind the plaintiffs worked with or near. The types of noisy equipment and machinery the plaintiffs worked with or near is set forth on page 3 of their Memorandum and was described in

greater detail in their depositions.

For the foregoing reasons, the plaintiffs respectfully request the Court reconsider its rulings regarding Requests 5, 14, 25, 27, 28, and 29.  Upon reconsideration, the plaintiffs request the Court grant the plaintiffs' Motion to Compel to the extent sought herein.  The plaintiffs also move for a ten day extension of time from the Court's decision with respect to the instant Motion within which to file any objections to the Court's January 23, 2004 Ruling on the Plaintiffs' Motion To Compel Conrail Defendants.

Respectfully submitted,

FOR THE PLAINTIFFS,


By_____
    Scott E. Perry (ct17236)
    CAHILL & GOETSCH, P.C.
    43 Trumbull Street
    New Haven, Connecticut  06511
    (203) 777-1000



## CERTIFICATE OF SERVICE

      This is to certify that a copy of the foregoing was mailed, first class mail, postage prepaid, on this 5th day of February, 2004, to Lori A. McCarthy, Esq., Flynn & Associates, P.C., 189 State Street, 6th Floor, Boston, Massachusetts 02109; and to Anthony D. Sutton, Esq., Ryan, Ryan, Johnson & Deluca, LLP, 80 Fourth Street, P.O. Box 3057, Stamford, Connecticut  06905.


_____
Scott E. Perry

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

_____X

CHARLES A. KANE,                          CIVIL ACTION
                                          No:  3:02CV01878(CFD)
        Plaintiff

VS.                                       **FELA HEARING LOSS
                                          CASE.  MAY BE FILED IN
                                          NEW HAVEN AS
                                          ORDERED BY
                                          MAGISTRATE JUDGE
                                          MARGOLIS.**

METRO-NORTH RAILROAD COMPANY,             February 5, 2004
et al.,

        Defendants
_____X


### MEMORANDUM OF LAW IN SUPPORT OF
### PLAINTIFFS' MOTION FOR RECONSIDERATION

The plaintiffs seek to have the Court reconsider its January 23, 2004 Ruling on the plaintiffs' Motion To Compel the Conrail Defendants.  Specifically, the plaintiffs seek to have the Court reconsider its ruling with respect to requests 5, 14, 25, 27, 28, and 29.  The Court should reconsider its ruling because it limited the scope of the requests to the "sites at which the plaintiff worked" when many, if not most, plaintiffs worked in mobile crews along the railroad tracks and were exposed loud noise from equipment/machinery that moved along the tracks and was used on the tracks.


**ORAL ARGUMENT REQUESTED.**

Many plaintiffs worked in the Defendants' Track Department in rail gangs, tie gangs, or surfacing gangs. These plaintiffs were exposed to noise from many different types of equipment/machinery that moved along the tracks and were used on the tracks. Likewise, several plaintiffs who were in the signal department rarely worked in a single location or facility - many worked along the tracks repairing equipment and they too were exposed to the noise from equipment and machinery that moved along the tracks and worked on the tracks. Only a few plaintiffs in the first two groups of hearing loss cases worked in a specific "site" or "facility" for any substantial period of time.

The noise to which many plaintiffs were exposed was from equipment/machinery used at hundreds of random locations on and around the tracks. See p. 3 of Ps.' Mem. of Law In Support Of Their Motion To Compel (listing the types of noisy equipment plaintiffs in the first two groups of hearing loss cases worked with or near). The Court, by limiting the production of documents to "sites" at which the plaintiff worked, is excluding all noise level testing of the types of equipment and machinery used by the plaintiffs or near which the plaintiffs frequently had to work on the tracks. Thus, documents such as Conrail's 1979 Maintenance of Way Noise Survey, a portion of which is attached hereto at App. 1,[4] would not even be covered by the Court's Order despite the fact such a document is highly relevant in nearly every hearing loss case.

A second example how the Court's Order fails to cover discoverable information concerns the testing of train horns and whistles. Most plaintiffs were repeatedly exposed to the train horns and whistles each time a train passed their work sites. Train engineers were required to blow the horns each time they came upon work crews near the tracks. Many

---

[4] A copy of Appendix 1 is only attached to the Court's copy of the instant motion and is not being filed with each respective hearing loss case. Appendix 1 was not produced by Conrail's attorneys in connection to these hearing loss cases despite the fact it is highly relevant.

plaintiffs testified there were usually several horn blasts per hour and the noise was extremely loud.  Yet, if the Court limits production of documents to the "sites" the plaintiffs worked, the plaintiffs will never obtain relevant information about the decibel levels of the train horns and whistles.

A third example concerns machinery such as rail saws.  Many plaintiffs have testified that they worked with and around rail saws, in addition to other noisy machinery.  Yet, the Court's Order does not require production of documents pertaining to testing of noise levels of rail saws or other noisy machinery listed on page 3 of their Memorandum.  The plaintiffs were exposed to noise from all the equipment/machinery listed on page 3.

RFP 5:  "All documents published by Defendants or any organization or other group with which the defendant is or has been affiliated referring to noise exposure to railroad workers."

The Court limited the production of responsive documents to the "sites at which the plaintiffs worked."  This request seeks information pertaining to general knowledge the Defendants had about noise exposure with regard to railroad workers.  Such information is relevant to what the railroad knew or reasonably should have known about the risks noise exposure posed to railroad workers and whether the railroads acted reasonably to provide the plaintiffs with a safe place to work.   Moreover, it should not be limited to "sites at which the plaintiffs worked" because most of the plaintiffs were exposed to noise from equipment/machinery along the tracks, as described above.

Accordingly, the plaintiffs respectfully request the Court reconsider its ruling regarding Request 5.  Upon reconsideration, the plaintiffs request the Court order production of all responsive documents pertaining to the effects of noise on railroad workers generally, including the effects of noise on railroad workers of the same crafts as the plaintiffs, and the effects of noise on railroad workers who work around equipment of a similar type and kind the plaintiffs worked with and around.

RFP 14 "All documents reflecting or pertaining to the Defendants' knowledge of alleged problems posed by noise exposure."

The Court limited production of responsive documents to "the sites at which Plaintiffs worked during the times that Plaintiffs worked."   Again, the plaintiffs request the Court not limit the production of responsive documents to "sites" because most of the plaintiffs worked along the tracks and were exposed to loud noise from mobile equipment/machinery.  Moreover, this Request seeks information pertaining to general knowledge the Defendants had about problems posed by noise exposure.  Such information is relevant to what the railroad knew or reasonably should have known about the risks noise exposure posed to railroad workers and whether the railroads acted reasonably to provide the plaintiffs with a safe place to work.

Accordingly, the plaintiffs respectfully request the Court reconsider its ruling regarding Request 14.  Upon reconsideration, the plaintiffs request the Court order production of all responsive documents pertaining to the defendants' knowledge of alleged problems posed by noise exposure generally, including the knowledge of alleged problems on railroad workers of the same crafts as the plaintiffs, and regarding equipment of similar type and kind the plaintiffs worked around.

RFP 25 "Any communications, instructions, directions or orders to any supervisory personnel that refers, reports, or relates to hearing loss or noise protection."

The Court limited the production of responsive documents to "the railroad facilities at which Plaintiffs' worked during the times that Plaintiffs worked...."  In addition to "facilities at which the plaintiffs worked," the plaintiffs request the Court request production of responsive documents pertaining to the plaintiffs' respective department, the plaintiffs' respective job craft, and the types of equipment/machinery the plaintiffs worked with or around.  Again, many plaintiffs did not work in facilities - they worked along the railroad tracks around the equipment and machines listed on page 3 of the plaintiffs' Memorandum.

RFP 27 "With regard to Defendants' hearing testing program, please provide any and all documentation concerning any statistics or figures on average hearing loss, total hearing loss, or any statistics compiled with regard to the hearing program conducted by the Defendants."

The plaintiffs respectfully request the Court not limit this Request to "facilities at which Plaintiffs worked" for the reasons set forth supra. Also, the plaintiffs ask that this Request not be limited to information prepared before 1984. Statistics compiled of average hearing loss among railroad workers and among various railroad jobs can be compared with hearing loss statistics concerning the general population in order to help prove that noise from working on the railroad contributed to causing the plaintiffs' hearing loss. If the defendants' statistics of noise loss among railroad workers were compiled in the mid to late 1980s or in the 1990s, they are no less probative than statistics compiled in the 70s or early 80s.

RFP 28 "Produce a copy of any and all correspondence, memoranda, or tangible evidence in whatever form concerning any safety meeting, safety minutes, safety booklets, safety information, or any tangible evidence concerning any written safety materials utilized at said safety meetings."

The plaintiffs respectfully request the Court reconsider its decision to limit this Request to "the facilities at which Plaintiffs' worked." Upon reconsideration, the plaintiffs request production of responsive documents insofar as they relate to noise, hearing loss and hearing protection (1) at the plaintiffs' work facilities, (2) involving the plaintiffs' job and craft, and (3) concerning equipment/machinery of similar type and kind the plaintiffs worked with or near.

RFP 29 "Produce a copy of any and all tests, reports, examinations, studies, surveys or result in whatever tangible form concerning any and all inspections concerning noise levels."

The Court limited the scope of this Request to "the facilities at which Plaintiffs worked . . . ." In addition to "facilities," the plaintiffs ask the Court to require production of responsive documents pertaining to the plaintiffs' job/craft and equipment/machinery of similar type and kind the plaintiffs worked with or near. The types of noisy equipment and machinery the plaintiffs worked with or near is set forth on page 3 of their Memorandum and was described in

greater detail in their depositions.

For the foregoing reasons, the plaintiffs respectfully request the Court reconsider its rulings regarding Requests 5, 14, 25, 27, 28, and 29.   Upon reconsideration, the plaintiffs request the Court grant the plaintiffs' Motion to Compel to the extent sought herein.   The plaintiffs also move for a ten day extension of time from the Court's decision with respect to the instant Motion within which to file any objections to the Court's January 23, 2004 Ruling on the Plaintiffs' Motion To Compel Conrail Defendants.

Respectfully submitted,

FOR THE PLAINTIFFS,


By_____

    Scott E. Perry (ct17236)
    CAHILL & GOETSCH, P.C.
    43 Trumbull Street
    New Haven, Connecticut  06511
    (203) 777-1000


## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed, first class mail, postage prepaid, on this 5th day of February, 2004, to Lori A. McCarthy, Esq., Flynn & Associates, P.C., 189 State Street, 6th Floor, Boston, Massachusetts 02109; and to Anthony D. Sutton, Esq., Ryan, Ryan, Johnson & Deluca, LLP, 80 Fourth Street, P.O. Box 3057, Stamford, Connecticut  06905.


_____

Scott E. Perry

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

_____X

FREDERICK N. KOVAL,                         CIVIL ACTION
                                            No:  3:02CV01879(GLG)
    Plaintiff

                                            **FELA HEARING LOSS**
VS.                                         **CASE.  MAY BE FILED IN**
                                            **NEW HAVEN AS**
                                            **ORDERED BY**
                                            **MAGISTRATE JUDGE**
                                            **MARGOLIS.**


METRO-NORTH RAILROAD COMPANY,               February 5, 2004
et al.,

    Defendants
_____X


## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR RECONSIDERATION

The plaintiffs seek to have the Court reconsider its January 23, 2004 Ruling on the plaintiffs' Motion To Compel the Conrail Defendants.  Specifically, the plaintiffs seek to have the Court reconsider its ruling with respect to requests 5, 14, 25, 27, 28, and 29.  The Court should reconsider its ruling because it limited the scope of the requests to the "sites at which the plaintiff worked" when many, if not most, plaintiffs worked in mobile crews along the railroad tracks and were exposed loud noise from equipment/machinery that moved along the tracks and was used on the tracks.

**ORAL ARGUMENT REQUESTED.**

Many plaintiffs worked in the Defendants' Track Department in rail gangs, tie gangs, or surfacing gangs. These plaintiffs were exposed to noise from many different types of equipment/machinery that moved along the tracks and were used on the tracks. Likewise, several plaintiffs who were in the signal department rarely worked in a single location or facility - many worked along the tracks repairing equipment and they too were exposed to the noise from equipment and machinery that moved along the tracks and worked on the tracks. Only a few plaintiffs in the first two groups of hearing loss cases worked in a specific "site" or "facility" for any substantial period of time.

The noise to which many plaintiffs were exposed was from equipment/machinery used at hundreds of random locations on and around the tracks. See p. 3 of Ps.' Mem. of Law In Support Of Their Motion To Compel (listing the types of noisy equipment plaintiffs in the first two groups of hearing loss cases worked with or near). The Court, by limiting the production of documents to "sites" at which the plaintiff worked, is excluding all noise level testing of the types of equipment and machinery used by the plaintiffs or near which the plaintiffs frequently had to work on the tracks. Thus, documents such as Conrail's 1979 Maintenance of Way Noise Survey, a portion of which is attached hereto at App. 1,[5] would not even be covered by the Court's Order despite the fact such a document is highly relevant in nearly every hearing loss case.

A second example how the Court's Order fails to cover discoverable information concerns the testing of train horns and whistles. Most plaintiffs were repeatedly exposed to the train horns and whistles each time a train passed their work sites. Train engineers were required to blow the horns each time they came upon work crews near the tracks. Many

---

[5] A copy of Appendix 1 is only attached to the Court's copy of the instant motion and is not being filed with each respective hearing loss case. Appendix 1 was not produced by Conrail's attorneys in connection to these hearing loss cases despite the fact it is highly relevant.

plaintiffs testified there were usually several horn blasts per hour and the noise was extremely loud. Yet, if the Court limits production of documents to the "sites" the plaintiffs worked, the plaintiffs will never obtain relevant information about the decibel levels of the train horns and whistles.

A third example concerns machinery such as rail saws. Many plaintiffs have testified that they worked with and around rail saws, in addition to other noisy machinery. Yet, the Court's Order does not require production of documents pertaining to testing of noise levels of rail saws or other noisy machinery listed on page 3 of their Memorandum. The plaintiffs were exposed to noise from all the equipment/machinery listed on page 3.

RFP 5: "All documents published by Defendants or any organization or other group with which the defendant is or has been affiliated referring to noise exposure to railroad workers."

The Court limited the production of responsive documents to the "sites at which the plaintiffs worked." This request seeks information pertaining to general knowledge the Defendants had about noise exposure with regard to railroad workers. Such information is relevant to what the railroad knew or reasonably should have known about the risks noise exposure posed to railroad workers and whether the railroads acted reasonably to provide the plaintiffs with a safe place to work. Moreover, it should not be limited to "sites at which the plaintiffs worked" because most of the plaintiffs were exposed to noise from equipment/machinery along the tracks, as described above.

Accordingly, the plaintiffs respectfully request the Court reconsider its ruling regarding Request 5. Upon reconsideration, the plaintiffs request the Court order production of all responsive documents pertaining to the effects of noise on railroad workers generally, including the effects of noise on railroad workers of the same crafts as the plaintiffs, and the effects of noise on railroad workers who work around equipment of a similar type and kind the plaintiffs worked with and around.

RFP 14 "All documents reflecting or pertaining to the Defendants' knowledge of alleged problems posed by noise exposure."

The Court limited production of responsive documents to "the sites at which Plaintiffs worked during the times that Plaintiffs worked."   Again, the plaintiffs request the Court not limit the production of responsive documents to "sites" because most of the plaintiffs worked along the tracks and were exposed to loud noise from mobile equipment/machinery.  Moreover, this Request seeks information pertaining to general knowledge the Defendants had about problems posed by noise exposure.  Such information is relevant to what the railroad knew or reasonably should have known about the risks noise exposure posed to railroad workers and whether the railroads acted reasonably to provide the plaintiffs with a safe place to work.

Accordingly, the plaintiffs respectfully request the Court reconsider its ruling regarding Request 14.  Upon reconsideration, the plaintiffs request the Court order production of all responsive documents pertaining to the defendants' knowledge of alleged problems posed by noise exposure generally, including the knowledge of alleged problems on railroad workers of the same crafts as the plaintiffs, and regarding equipment of similar type and kind the plaintiffs worked around.

RFP 25 "Any communications, instructions, directions or orders to any supervisory personnel that refers, reports, or relates to hearing loss or noise protection."

The Court limited the production of responsive documents to "the railroad facilities at which Plaintiffs' worked during the times that Plaintiffs worked...."  In addition to "facilities at which the plaintiffs worked," the plaintiffs request the Court request production of responsive documents pertaining to the plaintiffs' respective department, the plaintiffs' respective job craft, and the types of equipment/machinery the plaintiffs worked with or around.  Again, many plaintiffs did not work in facilities - they worked along the railroad tracks around the equipment and machines listed on page 3 of the plaintiffs' Memorandum.

RFP 27 "With regard to Defendants' hearing testing program, please provide any and all documentation concerning any statistics or figures on average hearing loss, total hearing loss, or any statistics compiled with regard to the hearing program conducted by the Defendants."

The plaintiffs respectfully request the Court not limit this Request to "facilities at which Plaintiffs worked" for the reasons set forth supra. Also, the plaintiffs ask that this Request not be limited to information prepared before 1984. Statistics compiled of average hearing loss among railroad workers and among various railroad jobs can be compared with hearing loss statistics concerning the general population in order to help prove that noise from working on the railroad contributed to causing the plaintiffs' hearing loss. If the defendants' statistics of noise loss among railroad workers were compiled in the mid to late 1980s or in the 1990s, they are no less probative than statistics compiled in the 70s or early 80s.

RFP 28 "Produce a copy of any and all correspondence, memoranda, or tangible evidence in whatever form concerning any safety meeting, safety minutes, safety booklets, safety information, or any tangible evidence concerning any written safety materials utilized at said safety meetings."

The plaintiffs respectfully request the Court reconsider its decision to limit this Request to "the facilities at which Plaintiffs' worked." Upon reconsideration, the plaintiffs request production of responsive documents insofar as they relate to noise, hearing loss and hearing protection (1) at the plaintiffs' work facilities, (2) involving the plaintiffs' job and craft, and (3) concerning equipment/machinery of similar type and kind the plaintiffs worked with or near.

RFP 29 "Produce a copy of any and all tests, reports, examinations, studies, surveys or result in whatever tangible form concerning any and all inspections concerning noise levels."

The Court limited the scope of this Request to "the facilities at which Plaintiffs worked . . . ." In addition to "facilities," the plaintiffs ask the Court to require production of responsive documents pertaining to the plaintiffs' job/craft and equipment/machinery of similar type and kind the plaintiffs worked with or near. The types of noisy equipment and machinery the plaintiffs worked with or near is set forth on page 3 of their Memorandum and was described in

greater detail in their depositions.

For the foregoing reasons, the plaintiffs respectfully request the Court reconsider its rulings regarding Requests 5, 14, 25, 27, 28, and 29.   Upon reconsideration, the plaintiffs request the Court grant the plaintiffs' Motion to Compel to the extent sought herein.   The plaintiffs also move for a ten day extension of time from the Court's decision with respect to the instant Motion within which to file any objections to the Court's January 23, 2004 Ruling on the Plaintiffs' Motion To Compel Conrail Defendants.

Respectfully submitted,

FOR THE PLAINTIFFS,


By_____
    Scott E. Perry (ct17236)
    CAHILL & GOETSCH, P.C.
    43 Trumbull Street
    New Haven, Connecticut  06511
    (203) 777-1000


### CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed, first class mail, postage prepaid, on this 5th day of February, 2004, to Lori A. McCarthy, Esq., Flynn & Associates, P.C., 189 State Street, 6th Floor, Boston, Massachusetts 02109; and to Anthony D. Sutton, Esq., Ryan, Ryan, Johnson & Deluca, LLP, 80 Fourth Street, P.O. Box 3057, Stamford, Connecticut  06905.


_____
Scott E. Perry

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

_____X

| | |
|---|---|
| SIGISMONDO LoVERME, | CIVIL ACTION |
| | No:  3:02CV01880(PCD) |
| Plaintiff | |
| | **FELA HEARING LOSS** |
| VS. | **CASE.  MAY BE FILED IN** |
| | **NEW HAVEN AS** |
| | **ORDERED BY** |
| | **MAGISTRATE JUDGE** |
| | **MARGOLIS.** |
| | |
| METRO-NORTH RAILROAD COMPANY, | February 5, 2004 |
| et al., | |
| | |
| Defendants | |

_____X

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR RECONSIDERATION

The plaintiffs seek to have the Court reconsider its January 23, 2004 Ruling on the plaintiffs' Motion To Compel the Conrail Defendants.  Specifically, the plaintiffs seek to have the Court reconsider its ruling with respect to requests 5, 14, 25, 27, 28, and 29.  The Court should reconsider its ruling because it limited the scope of the requests to the "sites at which the plaintiff worked" when many, if not most, plaintiffs worked in mobile crews along the railroad tracks and were exposed loud noise from equipment/machinery that moved along the tracks and was used on the tracks.

**ORAL ARGUMENT REQUESTED.**

Many plaintiffs worked in the Defendants' Track Department in rail gangs, tie gangs, or surfacing gangs. These plaintiffs were exposed to noise from many different types of equipment/machinery that moved along the tracks and were used on the tracks. Likewise, several plaintiffs who were in the signal department rarely worked in a single location or facility - many worked along the tracks repairing equipment and they too were exposed to the noise from equipment and machinery that moved along the tracks and worked on the tracks. Only a few plaintiffs in the first two groups of hearing loss cases worked in a specific "site" or "facility" for any substantial period of time.

The noise to which many plaintiffs were exposed was from equipment/machinery used at hundreds of random locations on and around the tracks. <u>See</u> p. 3 of Ps.' Mem. of Law In Support Of Their Motion To Compel (listing the types of noisy equipment plaintiffs in the first two groups of hearing loss cases worked with or near). The Court, by limiting the production of documents to "sites" at which the plaintiff worked, is excluding all noise level testing of the types of equipment and machinery used by the plaintiffs or near which the plaintiffs frequently had to work on the tracks. Thus, documents such as Conrail's 1979 Maintenance of Way Noise Survey, a portion of which is attached hereto at App. 1,[6] would not even be covered by the Court's Order despite the fact such a document is highly relevant in nearly every hearing loss case.

A second example how the Court's Order fails to cover discoverable information concerns the testing of train horns and whistles. Most plaintiffs were repeatedly exposed to the train horns and whistles each time a train passed their work sites. Train engineers were required to blow the horns each time they came upon work crews near the tracks. Many

_____

[6] A copy of Appendix 1 is only attached to the Court's copy of the instant motion and is not being filed with each respective hearing loss case. Appendix 1 was <u>not</u> produced by Conrail's attorneys in connection to these hearing loss cases despite the fact it is highly relevant.

2

plaintiffs testified there were usually several horn blasts per hour and the noise was extremely loud. Yet, if the Court limits production of documents to the "sites" the plaintiffs worked, the plaintiffs will never obtain relevant information about the decibel levels of the train horns and whistles.

A third example concerns machinery such as rail saws. Many plaintiffs have testified that they worked with and around rail saws, in addition to other noisy machinery. Yet, the Court's Order does not require production of documents pertaining to testing of noise levels of rail saws or other noisy machinery listed on page 3 of their Memorandum. The plaintiffs were exposed to noise from all the equipment/machinery listed on page 3.

RFP 5: "All documents published by Defendants or any organization or other group with which the defendant is or has been affiliated referring to noise exposure to railroad workers."

The Court limited the production of responsive documents to the "sites at which the plaintiffs worked." This request seeks information pertaining to general knowledge the Defendants had about noise exposure with regard to railroad workers. Such information is relevant to what the railroad knew or reasonably should have known about the risks noise exposure posed to railroad workers and whether the railroads acted reasonably to provide the plaintiffs with a safe place to work. Moreover, it should not be limited to "sites at which the plaintiffs worked" because most of the plaintiffs were exposed to noise from equipment/machinery along the tracks, as described above.

Accordingly, the plaintiffs respectfully request the Court reconsider its ruling regarding Request 5. Upon reconsideration, the plaintiffs request the Court order production of all responsive documents pertaining to the effects of noise on railroad workers generally, including the effects of noise on railroad workers of the same crafts as the plaintiffs, and the effects of noise on railroad workers who work around equipment of a similar type and kind the plaintiffs

worked with and around.

RFP 14 "All documents reflecting or pertaining to the Defendants' knowledge of alleged problems posed by noise exposure."

The Court limited production of responsive documents to "the sites at which Plaintiffs worked during the times that Plaintiffs worked."   Again, the plaintiffs request the Court not limit the production of responsive documents to "sites" because most of the plaintiffs worked along the tracks and were exposed to loud noise from mobile equipment/machinery.  Moreover, this Request seeks information pertaining to general knowledge the Defendants had about problems posed by noise exposure.  Such information is relevant to what the railroad knew or reasonably should have known about the risks noise exposure posed to railroad workers and whether the railroads acted reasonably to provide the plaintiffs with a safe place to work.

Accordingly, the plaintiffs respectfully request the Court reconsider its ruling regarding Request 14.   Upon reconsideration, the plaintiffs request the Court order production of all responsive documents pertaining to the defendants' knowledge of alleged problems posed by noise exposure generally, including the knowledge of alleged problems on railroad workers of the same crafts as the plaintiffs, and regarding equipment of similar type and kind the plaintiffs worked around.

RFP 25 "Any communications, instructions, directions or orders to any supervisory personnel that refers, reports, or relates to hearing loss or noise protection."

The Court limited the production of responsive documents to "the railroad facilities at which Plaintiffs' worked during the times that Plaintiffs worked...."  In addition to "facilities at which the plaintiffs worked," the plaintiffs request the Court request production of responsive documents pertaining to the plaintiffs' respective department, the plaintiffs' respective job craft, and the types of equipment/machinery the plaintiffs worked with or around.   Again, many plaintiffs did not work in facilities - they worked along the railroad tracks around the equipment

and machines listed on page 3 of the plaintiffs' Memorandum.

RFP 27 "With regard to Defendants' hearing testing program, please provide any and all documentation concerning any statistics or figures on average hearing loss, total hearing loss, or any statistics compiled with regard to the hearing program conducted by the Defendants."

The plaintiffs respectfully request the Court not limit this Request to "facilities at which Plaintiffs worked" for the reasons set forth supra.  Also, the plaintiffs ask that this Request not be limited to information prepared before 1984.  Statistics compiled of average hearing loss among railroad workers and among various railroad jobs can be compared with hearing loss statistics concerning the general population in order to help prove that noise from working on the railroad contributed to causing the plaintiffs' hearing loss.  If the defendants' statistics of noise loss among railroad workers were compiled in the mid to late 1980s or in the 1990s, they are no less probative than statistics compiled in the 70s or early 80s.

RFP 28 "Produce a copy of any and all correspondence, memoranda, or tangible evidence in whatever form concerning any safety meeting, safety minutes, safety booklets, safety information, or any tangible evidence concerning any written safety materials utilized at said safety meetings."

The plaintiffs respectfully request the Court reconsider its decision to limit this Request to "the facilities at which Plaintiffs' worked."  Upon reconsideration, the plaintiffs request production of responsive documents insofar as they relate to noise, hearing loss and hearing protection (1) at the plaintiffs' work facilities, (2) involving the plaintiffs' job and craft, and (3) concerning equipment/machinery of similar type and kind the plaintiffs worked with or near.

RFP 29 "Produce a copy of any and all tests, reports, examinations, studies, surveys or result in whatever tangible form concerning any and all inspections concerning noise levels."

The Court limited the scope of this Request to "the facilities at which Plaintiffs worked . . . ."  In addition to "facilities," the plaintiffs ask the Court to require production of responsive documents pertaining to the plaintiffs' job/craft and equipment/machinery of similar type and kind the plaintiffs worked with or near.  The types of noisy equipment and machinery the

plaintiffs worked with or near is set forth on page 3 of their Memorandum and was described in greater detail in their depositions.

For the foregoing reasons, the plaintiffs respectfully request the Court reconsider its rulings regarding Requests 5, 14, 25, 27, 28, and 29. Upon reconsideration, the plaintiffs request the Court grant the plaintiffs' Motion to Compel to the extent sought herein. The plaintiffs also move for a ten day extension of time from the Court's decision with respect to the instant Motion within which to file any objections to the Court's January 23, 2004 Ruling on the Plaintiffs' Motion To Compel Conrail Defendants.

Respectfully submitted,

FOR THE PLAINTIFFS,


By_____
    Scott E. Perry (ct17236)
    CAHILL & GOETSCH, P.C.
    43 Trumbull Street
    New Haven, Connecticut  06511
    (203) 777-1000



**CERTIFICATE OF SERVICE**

    This is to certify that a copy of the foregoing was mailed, first class mail, postage prepaid, on this 5th day of February, 2004, to Lori A. McCarthy, Esq., Flynn & Associates, P.C., 189 State Street, 6th Floor, Boston, Massachusetts 02109; and to Anthony D. Sutton, Esq., Ryan, Ryan, Johnson & Deluca, LLP, 80 Fourth Street, P.O. Box 3057, Stamford, Connecticut  06905.


_____
Scott E. Perry

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

_____X

| | |
|---|---|
| TIMOTHY STRAND, | CIVIL ACTION |
| | No:  3:02CV01883(AWT) |
| Plaintiff | |
| | **FELA HEARING LOSS** |
| VS. | **CASE.  MAY BE FILED IN** |
| | **NEW HAVEN AS** |
| | **ORDERED BY** |
| | **MAGISTRATE JUDGE** |
| | **MARGOLIS.** |
| METRO-NORTH RAILROAD COMPANY, | February 5, 2004 |
| et al., | |
| Defendants | |

_____X

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR RECONSIDERATION**

The plaintiffs seek to have the Court reconsider its January 23, 2004 Ruling on the plaintiffs' Motion To Compel the Conrail Defendants.  Specifically, the plaintiffs seek to have the Court reconsider its ruling with respect to requests 5, 14, 25, 27, 28, and 29.  The Court should reconsider its ruling because it limited the scope of the requests to the "sites at which the plaintiff worked" when many, if not most, plaintiffs worked in mobile crews along the railroad tracks and were exposed loud noise from equipment/machinery that moved along the tracks and was used on the tracks.

**ORAL ARGUMENT REQUESTED.**

Many plaintiffs worked in the Defendants' Track Department in rail gangs, tie gangs, or surfacing gangs. These plaintiffs were exposed to noise from many different types of equipment/machinery that moved along the tracks and were used on the tracks. Likewise, several plaintiffs who were in the signal department rarely worked in a single location or facility - many worked along the tracks repairing equipment and they too were exposed to the noise from equipment and machinery that moved along the tracks and worked on the tracks. Only a few plaintiffs in the first two groups of hearing loss cases worked in a specific "site" or "facility" for any substantial period of time.

The noise to which many plaintiffs were exposed was from equipment/machinery used at hundreds of random locations on and around the tracks. See p. 3 of Ps.' Mem. of Law In Support Of Their Motion To Compel (listing the types of noisy equipment plaintiffs in the first two groups of hearing loss cases worked with or near). The Court, by limiting the production of documents to "sites" at which the plaintiff worked, is excluding all noise level testing of the types of equipment and machinery used by the plaintiffs or near which the plaintiffs frequently had to work on the tracks. Thus, documents such as Conrail's 1979 Maintenance of Way Noise Survey, a portion of which is attached hereto at App. 1,[7] would not even be covered by the Court's Order despite the fact such a document is highly relevant in nearly every hearing loss case.

A second example how the Court's Order fails to cover discoverable information concerns the testing of train horns and whistles. Most plaintiffs were repeatedly exposed to the train horns and whistles each time a train passed their work sites. Train engineers were required to blow the horns each time they came upon work crews near the tracks. Many

---

[7] A copy of Appendix 1 is only attached to the Court's copy of the instant motion and is not being filed with each respective hearing loss case. Appendix 1 was not produced by Conrail's attorneys in connection to these hearing loss cases despite the fact it is highly relevant.

plaintiffs testified there were usually several horn blasts per hour and the noise was extremely loud.  Yet, if the Court limits production of documents to the "sites" the plaintiffs worked, the plaintiffs will never obtain relevant information about the decibel levels of the train horns and whistles.

A third example concerns machinery such as rail saws.  Many plaintiffs have testified that they worked with and around rail saws, in addition to other noisy machinery.  Yet, the Court's Order does not require production of documents pertaining to testing of noise levels of rail saws or other noisy machinery listed on page 3 of their Memorandum.  The plaintiffs were exposed to noise from all the equipment/machinery listed on page 3.

RFP 5:  "All documents published by Defendants or any organization or other group with which the defendant is or has been affiliated referring to noise exposure to railroad workers."

The Court limited the production of responsive documents to the "sites at which the plaintiffs worked."  This request seeks information pertaining to general knowledge the Defendants had about noise exposure with regard to railroad workers.  Such information is relevant to what the railroad knew or reasonably should have known about the risks noise exposure posed to railroad workers and whether the railroads acted reasonably to provide the plaintiffs with a safe place to work.   Moreover, it should not be limited to "sites at which the plaintiffs worked" because most of the plaintiffs were exposed to noise from equipment/machinery along the tracks, as described above.

Accordingly, the plaintiffs respectfully request the Court reconsider its ruling regarding Request 5.  Upon reconsideration, the plaintiffs request the Court order production of all responsive documents pertaining to the effects of noise on railroad workers generally, including the effects of noise on railroad workers of the same crafts as the plaintiffs, and the effects of noise on railroad workers who work around equipment of a similar type and kind the plaintiffs worked with and around.

RFP 14 "All documents reflecting or pertaining to the Defendants' knowledge of alleged problems posed by noise exposure."

The Court limited production of responsive documents to "the sites at which Plaintiffs worked during the times that Plaintiffs worked."   Again, the plaintiffs request the Court not limit the production of responsive documents to "sites" because most of the plaintiffs worked along the tracks and were exposed to loud noise from mobile equipment/machinery.  Moreover, this Request seeks information pertaining to general knowledge the Defendants had about problems posed by noise exposure.  Such information is relevant to what the railroad knew or reasonably should have known about the risks noise exposure posed to railroad workers and whether the railroads acted reasonably to provide the plaintiffs with a safe place to work.

Accordingly, the plaintiffs respectfully request the Court reconsider its ruling regarding Request 14.  Upon reconsideration, the plaintiffs request the Court order production of all responsive documents pertaining to the defendants' knowledge of alleged problems posed by noise exposure generally, including the knowledge of alleged problems on railroad workers of the same crafts as the plaintiffs, and regarding equipment of similar type and kind the plaintiffs worked around.

RFP 25 "Any communications, instructions, directions or orders to any supervisory personnel that refers, reports, or relates to hearing loss or noise protection."

The Court limited the production of responsive documents to "the railroad facilities at which Plaintiffs' worked during the times that Plaintiffs worked...."  In addition to "facilities at which the plaintiffs worked," the plaintiffs request the Court request production of responsive documents pertaining to the plaintiffs' respective department, the plaintiffs' respective job craft, and the types of equipment/machinery the plaintiffs worked with or around.  Again, many plaintiffs did not work in facilities - they worked along the railroad tracks around the equipment and machines listed on page 3 of the plaintiffs' Memorandum.

RFP 27 "With regard to Defendants' hearing testing program, please provide any and all documentation concerning any statistics or figures on average hearing loss, total hearing loss, or any statistics compiled with regard to the hearing program conducted by the Defendants."

The plaintiffs respectfully request the Court not limit this Request to "facilities at which Plaintiffs worked" for the reasons set forth supra.  Also, the plaintiffs ask that this Request not be limited to information prepared before 1984.  Statistics compiled of average hearing loss among railroad workers and among various railroad jobs can be compared with hearing loss statistics concerning the general population in order to help prove that noise from working on the railroad contributed to causing the plaintiffs' hearing loss.  If the defendants' statistics of noise loss among railroad workers were compiled in the mid to late 1980s or in the 1990s, they are no less probative than statistics compiled in the 70s or early 80s.

RFP 28 "Produce a copy of any and all correspondence, memoranda, or tangible evidence in whatever form concerning any safety meeting, safety minutes, safety booklets, safety information, or any tangible evidence concerning any written safety materials utilized at said safety meetings."

The plaintiffs respectfully request the Court reconsider its decision to limit this Request to "the facilities at which Plaintiffs' worked."  Upon reconsideration, the plaintiffs request production of responsive documents insofar as they relate to noise, hearing loss and hearing protection (1) at the plaintiffs' work facilities, (2) involving the plaintiffs' job and craft, and (3) concerning equipment/machinery of similar type and kind the plaintiffs worked with or near.

RFP 29 "Produce a copy of any and all tests, reports, examinations, studies, surveys or result in whatever tangible form concerning any and all inspections concerning noise levels."

The Court limited the scope of this Request to "the facilities at which Plaintiffs worked . . . ."  In addition to "facilities," the plaintiffs ask the Court to require production of responsive documents pertaining to the plaintiffs' job/craft and equipment/machinery of similar type and kind the plaintiffs worked with or near.  The types of noisy equipment and machinery the plaintiffs worked with or near is set forth on page 3 of their Memorandum and was described in

greater detail in their depositions.

For the foregoing reasons, the plaintiffs respectfully request the Court reconsider its rulings regarding Requests 5, 14, 25, 27, 28, and 29. Upon reconsideration, the plaintiffs request the Court grant the plaintiffs' Motion to Compel to the extent sought herein. The plaintiffs also move for a ten day extension of time from the Court's decision with respect to the instant Motion within which to file any objections to the Court's January 23, 2004 Ruling on the Plaintiffs' Motion To Compel Conrail Defendants.

Respectfully submitted,

FOR THE PLAINTIFFS,


By_____
      Scott E. Perry (ct17236)
      CAHILL & GOETSCH, P.C.
      43 Trumbull Street
      New Haven, Connecticut  06511
      (203) 777-1000



## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed, first class mail, postage prepaid, on this 5th day of February, 2004, to Lori A. McCarthy, Esq., Flynn & Associates, P.C., 189 State Street, 6th Floor, Boston, Massachusetts 02109; and to Anthony D. Sutton, Esq., Ryan, Ryan, Johnson & Deluca, LLP, 80 Fourth Street, P.O. Box 3057, Stamford, Connecticut  06905.


_____
Scott E. Perry

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

_____X

TIMOTHY SWEENEY,                    CIVIL ACTION
                                    No:  3:02CV01872(RNC)
    Plaintiff

VS.                                 **FELA HEARING LOSS
                                    CASE.  MAY BE FILED IN
                                    NEW HAVEN AS
                                    ORDERED BY
                                    MAGISTRATE JUDGE
                                    MARGOLIS.**

METRO-NORTH RAILROAD COMPANY,       February 5, 2004
et al.,

    Defendants
_____X

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR RECONSIDERATION

The plaintiffs seek to have the Court reconsider its January 23, 2004 Ruling on the plaintiffs' Motion To Compel the Conrail Defendants.  Specifically, the plaintiffs seek to have the Court reconsider its ruling with respect to requests 5, 14, 25, 27, 28, and 29.  The Court should reconsider its ruling because it limited the scope of the requests to the "sites at which the plaintiff worked" when many, if not most, plaintiffs worked in mobile crews along the railroad tracks and were exposed loud noise from equipment/machinery that moved along the tracks and was used on the tracks.

**ORAL ARGUMENT REQUESTED.**

Many plaintiffs worked in the Defendants' Track Department in rail gangs, tie gangs, or surfacing gangs. These plaintiffs were exposed to noise from many different types of equipment/machinery that moved along the tracks and were used on the tracks. Likewise, several plaintiffs who were in the signal department rarely worked in a single location or facility - many worked along the tracks repairing equipment and they too were exposed to the noise from equipment and machinery that moved along the tracks and worked on the tracks. Only a few plaintiffs in the first two groups of hearing loss cases worked in a specific "site" or "facility" for any substantial period of time.

The noise to which many plaintiffs were exposed was from equipment/machinery used at hundreds of random locations on and around the tracks. See p. 3 of Ps.' Mem. of Law In Support Of Their Motion To Compel (listing the types of noisy equipment plaintiffs in the first two groups of hearing loss cases worked with or near). The Court, by limiting the production of documents to "sites" at which the plaintiff worked, is excluding all noise level testing of the types of equipment and machinery used by the plaintiffs or near which the plaintiffs frequently had to work on the tracks. Thus, documents such as Conrail's 1979 Maintenance of Way Noise Survey, a portion of which is attached hereto at App. 1,[8] would not even be covered by the Court's Order despite the fact such a document is highly relevant in nearly every hearing loss case.

A second example how the Court's Order fails to cover discoverable information concerns the testing of train horns and whistles. Most plaintiffs were repeatedly exposed to the train horns and whistles each time a train passed their work sites. Train engineers were required to blow the horns each time they came upon work crews near the tracks. Many

---

[8] A copy of Appendix 1 is only attached to the Court's copy of the instant motion and is not being filed with each respective hearing loss case. Appendix 1 was not produced by Conrail's attorneys in connection to these hearing loss cases despite the fact it is highly relevant.

plaintiffs testified there were usually several horn blasts per hour and the noise was extremely loud. Yet, if the Court limits production of documents to the "sites" the plaintiffs worked, the plaintiffs will never obtain relevant information about the decibel levels of the train horns and whistles.

A third example concerns machinery such as rail saws. Many plaintiffs have testified that they worked with and around rail saws, in addition to other noisy machinery. Yet, the Court's Order does not require production of documents pertaining to testing of noise levels of rail saws or other noisy machinery listed on page 3 of their Memorandum. The plaintiffs were exposed to noise from all the equipment/machinery listed on page 3.

RFP 5: "All documents published by Defendants or any organization or other group with which the defendant is or has been affiliated referring to noise exposure to railroad workers."

The Court limited the production of responsive documents to the "sites at which the plaintiffs worked." This request seeks information pertaining to general knowledge the Defendants had about noise exposure with regard to railroad workers. Such information is relevant to what the railroad knew or reasonably should have known about the risks noise exposure posed to railroad workers and whether the railroads acted reasonably to provide the plaintiffs with a safe place to work. Moreover, it should not be limited to "sites at which the plaintiffs worked" because most of the plaintiffs were exposed to noise from equipment/machinery along the tracks, as described above.

Accordingly, the plaintiffs respectfully request the Court reconsider its ruling regarding Request 5. Upon reconsideration, the plaintiffs request the Court order production of all responsive documents pertaining to the effects of noise on railroad workers generally, including the effects of noise on railroad workers of the same crafts as the plaintiffs, and the effects of noise on railroad workers who work around equipment of a similar type and kind the plaintiffs worked with and around.

RFP 14 "All documents reflecting or pertaining to the Defendants' knowledge of alleged problems posed by noise exposure."

The Court limited production of responsive documents to "the sites at which Plaintiffs worked during the times that Plaintiffs worked."   Again, the plaintiffs request the Court not limit the production of responsive documents to "sites" because most of the plaintiffs worked along the tracks and were exposed to loud noise from mobile equipment/machinery.  Moreover, this Request seeks information pertaining to general knowledge the Defendants had about problems posed by noise exposure.  Such information is relevant to what the railroad knew or reasonably should have known about the risks noise exposure posed to railroad workers and whether the railroads acted reasonably to provide the plaintiffs with a safe place to work.

Accordingly, the plaintiffs respectfully request the Court reconsider its ruling regarding Request 14.  Upon reconsideration, the plaintiffs request the Court order production of all responsive documents pertaining to the defendants' knowledge of alleged problems posed by noise exposure generally, including the knowledge of alleged problems on railroad workers of the same crafts as the plaintiffs, and regarding equipment of similar type and kind the plaintiffs worked around.

RFP 25 "Any communications, instructions, directions or orders to any supervisory personnel that refers, reports, or relates to hearing loss or noise protection."

The Court limited the production of responsive documents to "the railroad facilities at which Plaintiffs' worked during the times that Plaintiffs worked...."  In addition to "facilities at which the plaintiffs worked," the plaintiffs request the Court request production of responsive documents pertaining to the plaintiffs' respective department, the plaintiffs' respective job craft, and the types of equipment/machinery the plaintiffs worked with or around.  Again, many plaintiffs did not work in facilities - they worked along the railroad tracks around the equipment and machines listed on page 3 of the plaintiffs' Memorandum.

RFP 27 "With regard to Defendants' hearing testing program, please provide any and all documentation concerning any statistics or figures on average hearing loss, total hearing loss, or any statistics compiled with regard to the hearing program conducted by the Defendants."

The plaintiffs respectfully request the Court not limit this Request to "facilities at which Plaintiffs worked" for the reasons set forth supra. Also, the plaintiffs ask that this Request not be limited to information prepared before 1984. Statistics compiled of average hearing loss among railroad workers and among various railroad jobs can be compared with hearing loss statistics concerning the general population in order to help prove that noise from working on the railroad contributed to causing the plaintiffs' hearing loss. If the defendants' statistics of noise loss among railroad workers were compiled in the mid to late 1980s or in the 1990s, they are no less probative than statistics compiled in the 70s or early 80s.

RFP 28 "Produce a copy of any and all correspondence, memoranda, or tangible evidence in whatever form concerning any safety meeting, safety minutes, safety booklets, safety information, or any tangible evidence concerning any written safety materials utilized at said safety meetings."

The plaintiffs respectfully request the Court reconsider its decision to limit this Request to "the facilities at which Plaintiffs' worked." Upon reconsideration, the plaintiffs request production of responsive documents insofar as they relate to noise, hearing loss and hearing protection (1) at the plaintiffs' work facilities, (2) involving the plaintiffs' job and craft, and (3) concerning equipment/machinery of similar type and kind the plaintiffs worked with or near.

RFP 29 "Produce a copy of any and all tests, reports, examinations, studies, surveys or result in whatever tangible form concerning any and all inspections concerning noise levels."

The Court limited the scope of this Request to "the facilities at which Plaintiffs worked . . . ." In addition to "facilities," the plaintiffs ask the Court to require production of responsive documents pertaining to the plaintiffs' job/craft and equipment/machinery of similar type and kind the plaintiffs worked with or near. The types of noisy equipment and machinery the plaintiffs worked with or near is set forth on page 3 of their Memorandum and was described in

greater detail in their depositions.

For the foregoing reasons, the plaintiffs respectfully request the Court reconsider its rulings regarding Requests 5, 14, 25, 27, 28, and 29.  Upon reconsideration, the plaintiffs request the Court grant the plaintiffs' Motion to Compel to the extent sought herein.  The plaintiffs also move for a ten day extension of time from the Court's decision with respect to the instant Motion within which to file any objections to the Court's January 23, 2004 Ruling on the Plaintiffs' Motion To Compel Conrail Defendants.

Respectfully submitted,

FOR THE PLAINTIFFS,


By_____
    Scott E. Perry (ct17236)
    CAHILL & GOETSCH, P.C.
    43 Trumbull Street
    New Haven, Connecticut  06511
    (203) 777-1000


## <u>CERTIFICATE OF SERVICE</u>

    This is to certify that a copy of the foregoing was mailed, first class mail, postage prepaid, on this 5th day of February, 2004, to Lori A. McCarthy, Esq., Flynn & Associates, P.C., 189 State Street, 6th Floor, Boston, Massachusetts 02109; and to Anthony D. Sutton, Esq., Ryan, Ryan, Johnson & Deluca, LLP, 80 Fourth Street, P.O. Box 3057, Stamford, Connecticut  06905.


_____
Scott E. Perry

7